By the Court.—Sedgwick, J.
The referee’s findings do. not allude (nor did the argument of counsel) to the effect upon the construction of the contract, of the *137 fact that plaintiff’s business was that of a purchaser of coal for sale by it, as well as that of mining coal. The proposed reduction of wages led to the miners in other collieries, that usually sold coal to plaintiff, stopping work, as well as to the strike in plaintiff’s own mines. Probably nothing would be gained, for the consideration of the vital question between the parties by pursuing an inquiry suggested by this. When the contract says that every effort will be made by the company to fulfil its contract, but if strikes among miners materially decrease the quantity of coal the company would otherwise have to deliver, the company is not to be liable, it is clear that the contract meant such strikes as might happen against every effort which the company could use to prevent them. If the company could prevent a strike likely to lead to an inability to perform the contract, and did not, or if they, say, encouraged the workmen to such a strike, it would not be true that the company had made every effort to fulfil the contract. We are looking at what is contained in one sentence, and are satisfied that such isx the intended meaning of the phrase, strikes among miners.
This proposition is strengthened from these words, " strikes among miners,” being associated with“ storms, floods, breaks, accidents, and combinations and turnouts.” These latter words have a quality in common, in relation to their leading to a non-fulfilment of the contract. That is, they are in their nature beyond .the plaintiffs’ control. It is to be intended that “strikes among miners,” as used, are such as have the same character of being beyond plaintiffs’ control. This is not weakened by the fact that the words “or any occurrence whatever ” are also used in connection with the words now considered. Particular words are not enlarged or varied by being conjoined to general words. On the contrary, general words are limited by particular ones used with them (Van Hagen v. Van *138 Rennsalaer, 18 John. p..428), and by the nature of the contract. These general words must have some limitation. They cannot mean that which is within their verbal significance, viz., that if the production of coal is stopped by the plaintiffs’ direct order, the plaintiffs are not to be liable. The instrument, being a contract, and the nature of “storms, floods, and accidents,” suggest that any occurrence, as specified in the contract, means-any unavoidable occurrence.
It is rather the exception than the rule, to give to a-word in a contract or a statute all the meanings which might be attributed to it, if it were to be defined as a word by itself: It is to be construed according to the
mode of its particular use. The words we examine are in a contract which the parties have made because of its character and force as a contract. Although the parties might have, if they had wished, made a stipulation in it that it should not entail any liability whatever on either one of them, yet until such a purpose is clearly manifested the fact remains that the parties mean that the contract should impose an obligation. That fact is a leading consideration in weighing the particular clauses of the agreement. These should not have given to them a meaning which will destroy the contract, when another meaning, which will uphold it, is at hand, just as fit and true as the former. The contract obligation remains, modified, but not destroyed.
A late case is sufficient illustration of all this. A com-' mon carrier by special contract is exempted from liability for loss by fire. Verbally this means fire of any kind however caused. Yet the common carrier is liable if the fire happens from his own negligence (Lamb v. The Camden and Amboy Railroad Co., 46 N. Y. R. p. 271). It would be no answer to his liability that there was no intention of causing the loss by fire. The contract is not supposed to include a fire as to which he was but only negligent.
*139 I have come to the conclusion, from these considerations, that the true construction of the phrase “ strikes,” etc., used as it is, is strikes that occur without any agency of plaintiff in inducing or causing them.
On this point, the learned counsel for the plaintiff made the observation that, from the peculiarities of the contract, it must be intended that the parties meant that the plaintiff should conduct its business according to its own customs and requirements, and that this involved the exercise of discretion by plaintiff in fixing its servants’ wages, as it might do if no contract were made. We do not agree to this so as to relieve the plaintiff from any "positive obligation it has made. There was an agreement to deliver. So far as any part of this throws upon the defendant the risk attendant upon a management at discretion by plaintiff of its business, the defendants bear such risks, but no further. The plaintiff has in effect contracted to manage its business so as to be able to deliver, excepting if inability to do this should come from the specified causes which are here examined.
Another view of the matter may be taken. If one contracts unconditionally to do an act, the duty of performance is absolute, and it is his own fault if he do not especially provide against contingencies which prevent performance (Tompkins v. Dudley, 25 N. Y. R. p. 272).
In the contract before us there is an absolute engagement by plaintiff. In the first place, they limited their otherwise absolute agreement to deliver, by providing that if strikes among miners so interrupted their business as to materially decrease the quantity of coal they would otherwise have, then they should not be liable for a non-delivery. But they, as modifying all this, made an express and absolute engagement 1 ‘ that every effort will be made by the company for the fulfilment of its contract.” A breach of this creates a liability for *140 damages that follow the breach, as would a breach of any other part of the agreement. This general obligation included the specific obligation to make every effort to prevent strikes. The finding of the referee is, that the company caused the strike by a proposal to reduce wages. The plaintiff places itself upon this strike as absolving them, under the contract, from the obligation to deliver. The evidence is, that the officers and agents consulted as to the probability of a strike following the reduction, and they came to the conclusion that it would not follow. To make every effort to prevent the strike required that they should abstain from acts which involved some probability of causing a strike, even if in the judgment of the officer the probabilities that it would not be so caused were greater or more in number. The proposal to reduce wages had an immediate connection with the means the company were using to fulfil the contract. They used men to get out the coal, and when they proposed to them to reduce their wages, for which they worked, it had a direct bearing upon the production of coal.
It was not necessary that the defendants should put their claim upon the breach of this particular clause. Their cause of action was the non-delivery of the coal. The plaintiffs were as a matter of defence to set up the exemption from liability (Hotham v. The East India Co., 1 T. R. p. 645), and the obligation to use every effort is an answer to that claim of exemption which the defendants were not obliged by our system of pleadings to set up, after the reply was served.
I think, then, that the learned referee erred on two - grounds. First. The strike that occurred was not of the kind specified in the clause of exemption from liability. Second. The strike that diminished the plaintiff’s supply of coal was caused by a breach of the plaintiff’s agreement to use every effort to fulfil the contract.
The case of Berwick v. Swindell (3 A. & E. p. 868, 5 N. *141 & M. p. 381), involved a contract which the court thought had expressly stipulated that the obligor might or might not, as he chose, do a certain act, and therefore he might do it although that created a casus omissus, as to which the other parts of the contract made no provision for Ms liability, and therefore he was not liable. The case, however, recognizes the rules of construction upon which we have acted in tMs case.
Judgment reversed, order of reference vacated, and a new trial ordered, with costs to appellant to abide the event.
Barboub, C. J., and Freedman J., concurred.